[No. B024874. Second Dist., Div. Four. Feb. 27, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
RAHEEM HALL, Defendant and Appellant.

COUNSEL

Herbert M. Barish, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Roy C. Preminger and Pamela C. Hamanaka, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

McCLOSKY, J.—After a jury trial, defendant Raheem Hall was found guilty as charged in count I of the information of the murder of Kari Ann

Kaye in violation of Penal Code section 187,[1] and the jury found the murder to be of the first degree. The jury further found to be true (1) the allegation that Ms. Kaye had been murdered by appellant while he was engaged in the commission of the crime of robbery, within the meaning of section 190.2, subdivision (a)(17), and (2) that appellant had personally used a firearm, within the meaning of sections 12022.5 and 1203.06, subdivision (a)(1) in the commission of the crime. After the jury failed to reach a verdict as to the penalty, the trial court declared a mistrial as to the penalty. Pursuant to section 190.2, subdivision (a), appellant's motion for probation was denied, and appellant was sentenced to life imprisonment without possibility of parole and given conduct credits. Defendant appeals from the judgment of conviction. We affirm.

## CONTENTIONS

Defendant's only contentions on appeal are that (1) the trial court erred when it failed to require the prosecutor to justify his exclusion of Blacks from the jury panel and (2) the trial court erred when it instructed the jury pursuant to CALJIC No. 2.11.5 (4th ed. 1979), because this instruction unfairly diminished the scrutiny which the jury should have applied to the testimony of Debra Haughton.

The People contend that (1) defendant failed to present a prima facie case of group bias under *People* v. *Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748]; and (2) the jury was properly instructed pursuant to CALJIC No. 2.11.5 in regard to nonwitness Quima Phillips.

## FACTS

In the course of a robbery at a Carl's Jr. located at 5th and Western, Los Angeles, defendant shot and killed Kari Ann Kaye. Such further facts as are necessary to an understanding of the case will be given below.

## DISCUSSION

### I

Every criminal defendant has a constitutional right to a trial by jury drawn from a representative cross-section of the community. (*Batson* v. *Kentucky* (1986) 476 U.S. 79, 85-86, 89, 97 [90 L.Ed.2d 69, 80, 82-83, 88, 106 S.Ct. 1712]; *People* v. *Wheeler, supra,* 22 Cal.3d 258, 272; U.S. Const., 6th Amend.; Cal. Const., art. I, § 16.) Under the California Constitu-

---

[1] All section references are to the Penal Code unless expressly noted otherwise.

tion, this right is violated when the prosecution exercises its peremptory challenges to remove prospective jurors on the sole ground of group bias. (*People* v. *Wheeler, supra,* 22 Cal.3d at pp. 276-277.) Group bias exists "when a party presumes that certain jurors are biased merely because they are members of an identifiable group distinguished on racial, religious, ethnic, or similar grounds . . . ." (*Id.* at p. 276.)

Defendant Hall contends that his constitutional right to trial by a jury drawn from a representative cross-section of the community was violated because the prosecutor exercised his peremptory challenges to systematically exclude Black prospective jurors on the ground of group bias alone. To determine whether defendant's contention has merit we turn first to *People* v. *Wheeler, supra,* 22 Cal.3d 258.

In *Wheeler,* this state's high court stated that a party exercising a peremptory challenge is presumed to be doing so on a constitutionally permissible ground. This presumption is, however, rebuttable. (*People* v. *Wheeler, supra,* 22 Cal.3d at p. 278.)

In order to rebut this presumption of constitutionality, a party who believes that his or her opponent's peremptory challenges are being exercised on the sole ground of group bias has the burden of "rais[ing] the point in timely fashion and mak[ing] a prima facie case of such discrimination to the satisfaction of the court." (22 Cal.3d at p. 280.)

To meet this burden, the objecting party must (1) "make as complete a record of the circumstances as is feasible," (2) "establish that the persons excluded are members of a cognizable group," and (3) "from all the circumstances of the case . . . show a strong likelihood that such persons are being challenged because of their group association rather than because of any specific bias." (22 Cal.3d at p. 280, fn. omitted.)

Once a prima facie case of discrimination has been established, the burden shifts to the opposing party to demonstrate that prospective jurors were not peremptorily challenged on the sole basis of group bias. To meet this burden of justification, "the allegedly offending party must satisfy the court that he exercised such peremptories on grounds that were reasonably relevant to the particular case on trial or its parties or witnesses—i.e., for reasons of specific bias . . . ." (22 Cal.3d at p. 282.)

Defendant Hall argues that he made a prima facie showing that the prosecutor was exercising his peremptory challenges to systematically remove Black prospective jurors on the ground of group bias alone and that, therefore, the trial court erred in not requiring the prosecutor to justify his

use of peremptory challenges. Respondent, in turn, argues that defendant failed in the first instance to make a prima facie case of group discrimination. The facts relevant to a determination of this issue are as follows: After the prosecutor had exercised his ninth peremptory challenge, defense counsel asked to approach the bench. During the conference held at the side bar, defense counsel explained that he had requested to approach the bench "strictly for establishing a record pursuant to People versus Wheeler." He then noted that the prosecutor had exercised nine peremptory challenges and that all but two of the prospective jurors challenged were Black. He further stated that *Wheeler* "does indicate that counsel should be clear on the record if there appears to be a pattern of systematic exclusion of blacks by use of peremptories."

The prosecutor then interjected that "[i]n this particular case these jurors are all excused because they do not seem to be a strong juror for the People in regard to the death penalty." The prosecutor proceeded to state his reasons for exercising his ninth peremptory challenge to remove a Black prospective juror stating, "Linda Webb, if you will recall, on voir dire says she allows her husband to do all the reading in the family. I don't want a juror like that, that is not interested in current events. That is why." The prosecutor further represented that he had "a reason for excluding all the other jurors if the court wants to take time out to hear it."

The trial court noted that both sides had asked prospective jurors their views on the death penalty and opined that "it may have a tremendous bearing on how the peremptories are being exercised."

Without first making a finding as to whether defendant established a prima facie case of group bias, the trial court stated that it would be advisable if the prosecutor explained his actions and invited him to make any further comments that he was prepared to make without excusing the jury. In light of the prosecutor's representation that it would take some time to set forth his reasons for excusing the other Black jurors, defense counsel stated, "We can do it at the recess, I guess. We can just make note."

The trial court stated that it would reserve ruling on the issue, noting that "the People should have an opportunity to get the information and to fill in the record on that subject, which is related also to a Hovey[2] hearing, which has great bearing on the exercise of peremptories."

---

[2] In *Hovey* v. *Superior Court* (1980) 28 Cal.3d 1, 80 [168 Cal.Rptr. 128, 616 P.2d 1301], the California Supreme Court in the exercise of its supervisory power over the criminal court system held that "that portion of the voir dire of each prospective juror which deals with issues which involve death-qualifying the jury should be done individually and in sequestration." (Fn. omitted.)

The prosecutor expressed his belief that a *Wheeler* situation was not presented, noting that five Black jurors were currently in the jury box and that on four or five occasions the prosecutor had accepted the jury as then constituted and that on one such occasion when the People accepted the jury there were seven Black jurors on the jury.

In response the trial court stated that it believed the prosecution was proceeding properly. It stated that it recalled the views stated during the *Hovey* hearing and took note of the current composition of the jury, but stated that it wanted to reserve ruling on the issue until a recess and to give the prosecutor an opportunity to state anything he wanted for the record.

The prosecutor stated that he would set forth the reasons for removing the prospective Black jurors but stated that he would do so under protest because "this is not a *Wheeler* situation."

The trial court then stated: "I am in a [*sic*] agreement it is not. I will simply defer a ruling until recess. If there is anything further to be added it can be stated then."

Jury selection then continued. During the course of jury selection, the prosecutor at a side-bar conference held after he had once again accepted the jury as then constituted asked that the record reflect that he had accepted a jury with six Black jurors. The trial court stated that it would be so noted on the record and that that fact "along with everything else that I have noted, a clear cut factor on there not being, in my view, any Wheeler—a valid Wheeler objection."

When the prosecutor pointed out that the defense had been excusing more Whites than Blacks, the trial court stated, "I don't think we have quite reached Wheeler for either side, Gentlemen."

At no time after defendant made his *Wheeler* objection did the trial court require the prosecutor to state his reasons for exercising seven of his first nine peremptories to excuse Black prospective jurors.

By the conclusion of the jury selection process, the prosecutor had exercised a total of 16 peremptory challenges against various prospective jurors who had been called to take a seat in the jury box and 3 peremptory challenges against various prospective alternate jurors. Defendant did not attack any of the peremptory challenges made by the prosecutor after the *Wheeler* objection was made. The jury actually sworn to try the case had six Black jurors on it.

■ Although defendant Hall did not make a formal motion under *Wheeler* to dismiss the jurors seated and to quash the remaining venire on the ground that the jury as constituted failed to comply with the representative cross-section requirement, defense counsel clearly raised the issue of systematic exclusion of Black prospective jurors because of group bias alone. The trial court, therefore, properly considered defense counsel's request to make a record under *Wheeler* to be a *Wheeler* objection.

■ In support of its argument that defendant did not make a prima facie showing of group bias, respondent contends that defendant's *Wheeler* objection which was not raised "until the People had exercised their ninth peremptory challenge and appellant had exercised his eleventh peremptory challenge" was untimely "because about half of the voir dire process had already occurred."

*People* v. *Ortega* (1984) 156 Cal.App.3d 63, 67-68, 70 [202 Cal.Rptr. 657], holds that a *Wheeler* objection that is raised after the jury has been sworn is untimely, while one that is raised during the jury selection process is regarded as timely. Without deciding whether a *Wheeler* objection made very late in the jury selection process is timely, we deem defendant Hall's *Wheeler* objection, interposed during the jury selection process in this case, to have been timely.

■ Respondent next contends that the fact that the prosecutor accepted the jury as constituted four times before defendant made his *Wheeler* objection and that on each of those occasions Black prospective jurors were seated on the jury precludes a finding that defendant established a prima facie case of group bias.

In *People* v. *Motton* (1985) 39 Cal.3d 596, 607 [217 Cal.Rptr. 416, 704 P.2d 176], the Attorney General argued that defendant's prima facie showing of discrimination was rebutted by the fact that the prosecutor had on three occasions accepted the jury when there were one or two Blacks on the panel. In rejecting this argument, the *Motton* court stated, " '[t]his contention ignores the practical realities of jury selection and misses the point in *Wheeler*. If the presence on the jury of members of the cognizable group in question is evidence of intent not to discriminate, then any attorney can avoid the appearance of systematic exclusion by simply passing the jury while a member of the cognizable group that he wants to exclude is still on the panel. This ignores the fact that other members of the group may have been excluded for improper, racially motivated reasons. . . . By insisting that the presence of one or two black jurors on the panel is proof of an absence of intent to systematically exclude the several blacks that were

excluded, the People exalt form over substance.'" (39 Cal.3d at pp. 607-608.)

We believe that the observations of the *Motton* court apply in this case and require us to reject the respondent's argument that the prosecutor's acceptance of the jury when Blacks were in the jury box precludes a finding that defendant established a prima facie case of group bias. A prima facie showing of group discrimination may be made even when a member or members of a cognizable group remain on the jury. (*People* v. *Granillo* (1987) 197 Cal.App.3d 110, 121 [242 Cal.Rptr. 639].) The point is not the number of a cognizable minority group still on the panel at the time of the challenge, but the use of the challenge for improper racially motivated reasons. In other words, a prosecutor may not claim legal solace from the mere fact alone that he or she left members of a cognizable minority group on the jury panel.

 Defendant contends that the trial court's invitation to the prosecutor to explain his exercise of peremptory challenges arguably constituted an implied finding of a prima facie case of group discrimination.

In *People* v. *Turner* (1986) 42 Cal.3d 711 [230 Cal.Rptr. 656, 726 P.2d 102], defendant made a motion under *Wheeler* for a mistrial due to the systematic exclusion of Black prospective jurors. After he set forth the basis for his motion, the trial court asked the prosecutor to explain. The *Turner* court having noted that "unless the trial court in the present case had made at least an implied finding of group discrimination, it would have had no basis for asking the prosecutor to 'explain' the reasons for his peremptory challenges," deemed the trial court's inquiry to be an implied finding of group discrimination which shifted the burden to the prosecutor to justify his exercise of peremptory challenges. (42 Cal.3d at p. 719.) The *Turner* court expressly stated, however, that it was not to be understood as approving of implied rulings and stressed that "in every case in which a *Wheeler* motion is made the trial court should expressly rule on the sufficiency of the showing of a prima facie case of group bias." (42 Cal.3d at p. 719, fn. 3.) We heartily endorse this view and point out to the trial bench that a better record for review is presented when the trial court expressly rules on the motion.

In the present case, we cannot deem the trial court's invitation to the prosecutor to state his reasons for exercising seven out of his first nine peremptory challenges to exclude Black prospective jurors to be an implied finding that defendant had established a prima facie case of group bias. As the facts set forth above show, the prosecutor stated that he would state his reasons but would only do so under protest because it was his position that

a *Wheeler* situation was not presented. The trial court agreed with the prosecutor but stated that it was simply deferring its ruling until a recess. This statement made by the trial court precludes us from concluding that the trial court's invitation to the prosecutor to explain his actions constituted an implied finding of a prima facie case of group bias. This statement further evidences the trial court's initial confusion regarding the requirements of *Wheeler*.

Under the two-part test enunciated in *Wheeler*, the prosecution does not have to justify its use of peremptory challenges until the trial court first makes a finding that defendant has made a prima facie showing that the prosecutor's use of peremptory challenges reflects group discrimination. In this case, during the jury selection process that followed after defendant's *Wheeler* objection, the trial court ruled that defendant had not made a valid *Wheeler* objection and did so without requiring the prosecutor to explain his actions. ▆▆▆ The question that remains to be decided, therefore, is whether defendant effectively rebutted the presumption of constitutionality by demonstrating a prima facie case of group discrimination, thereby shifting the burden of justification to the prosecutor.

The only basis stated by defense counsel in support of defendant's *Wheeler* motion was that the prosecutor had exercised seven of his first nine peremptory challenges to remove Black prospective jurors. Defense counsel made no attempt to specify the number of Blacks in the venire or the composition of the remaining jurors. Apart, however, from the question of whether defendant made a record as complete as feasible, we conclude that defendant failed to demonstrate a strong likelihood that the Black prospective jurors who are members of a cognizable group were challenged because of their group association rather than because of any specific bias. (*People* v. *Turner, supra,* 42 Cal.3d 711, 719.)

There are many ways in which a party can make a showing that persons are being excluded because of group bias. The *Wheeler* court set forth certain types of evidence, though not exclusive, that are relevant for this purpose. "[T]he party may show that his opponent has struck most or all of the members of the identified group from the venire, or has used a disproportionate number of his peremptories against the group. He may also demonstrate that the jurors in question share only this one characteristic—their membership in the group—and that in all other respects they are as heterogeneous as the community as a whole. Next, the showing may be supplemented when appropriate by such circumstances as the failure of his opponent to engage these same jurors in more than desultory voir dire, or indeed to ask them any questions at all. Lastly, . . . the defendant need not be a member of the excluded group in order to complain of a violation of

the representative cross-section rule; yet if he is, and especially if in addition his alleged victim is a member of the group to which the majority of the remaining jurors belong, these facts may also be called to the court's attention." (*People* v. *Wheeler, supra,* 22 Cal.3d at pp. 280-281, fn. omitted.)

In the present case, defendant contends that he made the required showing because he established that the prosecutor used a disproportionate number of peremptories against Blacks and because he himself is Black. Defendant relies on no other evidence or facts to establish a prima facie case of group bias.

A prima facie case of group bias was found in *Wheeler* based on a showing that seven peremptory challenges were used to excuse all Blacks from the jury and in *People* v. *Motton, supra,* 39 Cal.3d 596, where the prosecutor used five of eight challenges to remove all Black jurors prior to the *Wheeler* motion and seven of thirteen challenges to eliminate Black jurors by the close of jury selection. A similar finding was made in *People* v. *Hall* (1983) 35 Cal.3d 161, 169 [197 Cal.Rptr. 71, 672 P.2d 854], when five of eight challenges were used to remove all Blacks from the jury; in *People* v. *Clay* (1984) 153 Cal.App.3d 433, 456 [200 Cal.Rptr. 269], when four of ten challenges were used to remove all Black jurors; in *Holley* v. *J & S Sweeping Co.* (1983) 143 Cal.App.3d 588, 590 [192 Cal.Rptr. 74], when three of six challenges were made to remove three of four Black jurors; in *People* v. *Fuller* (1982) 136 Cal.App.3d 403, 415 [186 Cal.Rptr. 283], when three challenges were used to remove the only three Black jurors.

Inasmuch as defendant expressly states that he is not arguing that the prosecutor removed all or most of the Black prospective jurors from the venire, none of these cases are of avail to defendant.

As stated earlier, the prosecutor exercised a total of 16 peremptory challenges against prospective jurors and 3 peremptory challenges against prospective alternate jurors. Defendant does not, however, question the propriety of any of the challenges made after his *Wheeler* objection was made. Under the circumstances of this particular case, we cannot conclude that the prosecutor's use of seven out of sixteen peremptories to exclude Black prospective jurors is disproportionate.

In *People* v. *Snow* (1987) 44 Cal.3d 216 [242 Cal.Rptr. 477, 746 P.2d 452], the court concluded that a prima facie case of group bias had been demonstrated where the prosecutor used six out of sixteen challenges to exclude Black jurors. The *Snow* court rejected the people's argument that the prosecutor's use of 16 peremptory challenges to exclude " 'only' " 6 Black jurors distinguished the case from others involving a larger percent-

age of exclusion on grounds of group bias. The *Snow* court "[found] the distinction untenable, especially in a case in which even the trial judge expressed serious suspicions that the prosecutor was using some of his peremptory challenges to exclude Blacks." (44 Cal.3d at p. 226.)

Although the prosecutor in this case exercised seven of his sixteen peremptories to exclude Black jurors, this case is distinguishable from *Snow* because, unlike the trial judge in *Snow*, the trial judge in this case stated his belief that the prosecution was proceeding properly and that a *Wheeler* situation had not been presented. In stating that defendant's *Wheeler* objection was not valid, and impliedly ruling that defendant had failed to make a prima facie showing of group discrimination, the trial court focused in part on the fact that the prosecution had on numerous occasions accepted the jury as constituted when Blacks were on the jury.

While, as we have stated, the presence of Blacks on the jury does not conclusively rebut a finding of prima facie group discrimination made by the trial court or preclude the trial court from finding that a prima facie case of group discrimination has been established, this fact is a relevant one to be considered when ruling on a *Wheeler* objection. The *Snow* court stated that the presence of Blacks on the jury "may be an indication of the prosecutor's good faith in exercising his peremptories, and may be an appropriate factor for the trial judge to consider in ruling on a *Wheeler* objection . . . ." (44 Cal.3d at p. 225)

In addition to the fact that there were numerous Blacks on the jury, the trial court expressed its belief that the information elicited during the *Hovey* hearing had a tremendous bearing on the manner in which the prosecutor exercised his peremptory challenges. On appeal, defendant does not contend that the removal of the excluded Black jurors was not justified as the result of answers given by them during the *Hovey* hearing. We conclude, therefore, that defendant did not establish a prima facie case of group discrimination. Because defendant did not rebut the presumption of constitutionality, the prosecutor was not required to justify his use of peremptory challenges. The trial court did not err in concluding that defendant had not made a valid *Wheeler* objection.

## II

In accordance with CALJIC No. 2.11.5, the trial court instructed the jury as follows: "There has been evidence in this case indicating that a person other than defendant was or may have been involved in the crime for which the defendant is on trial. You must not discuss or give any consideration as to why the other person is not being prosecuted in this trial or

whether he had been or will be prosecuted." The CALJIC Use Note accompanying the text of the instruction indicates that the CALJIC No. 2.11.5 is not to be given if the other person is a prosecution or defense witness.

Defendant Hall contends that the trial court committed reversible error in giving this instruction because it "unfairly diminished the scope and intensity of scrutiny which the jury should have applied to the testimony of Debra Houghton [*sic*; Haughton]" who testified as a witness for the prosecution.

■■■ The Attorney General argues that defendant waived his objection to CALJIC No. 2.11.5 by failing to raise it in the trial court. This argument lacks merit. (See *People* v. *Croy* (1985) 41 Cal.3d 1, 12 [221 Cal.Rptr. 592, 710 P.2d 392], fn. 6.) Section 1259 in pertinent part states that "[t]he appellate court may also review any instruction given, refused or modified, even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby." We shall proceed to address the merits of defendant's contention.

■■■ In the information, defendant Hall, together with Quima Theresa Phillips, was charged with the murder of Kari Ann Kaye. Prior to trial, the prosecution conceded the merits of defendant's motion for a separate trial.

Respondent Attorney General argues that CALJIC No. 2.11.5 obviously applied to Ms. Phillips rather than Ms. Haughton. In support of this position, respondent directs our attention to a portion of the prosecutor's closing arguing during which he read CALJIC No. 2.11.5 to the jury and told them not to consider whether Ms. Phillips has been or is going to be prosecuted.

We cannot conclude that CALJIC No. 2.11.5 obviously applied only to Ms. Phillips. Because the jury was instructed to determine whether Ms. Haughton and another individual were accomplices and because the term "accomplice" was defined in part as "one who is subject to prosecution for the identical offense charged against the defendant on trial," we must conclude that the trial court erred in instructing the jury in accordance with CALJIC No. 2.11.5. Given, however, the related instruction informing the jury to view the testimony of an accomplice with distrust, and in the context of the instructions taken as a whole, the error was clearly harmless. (*People* v. *Silva* (1988) 45 Cal.3d 604, 627 [247 Cal.Rptr. 573, 754 P.2d 1070], cert. den. *Silva* v. *California* (1989) 488 U.S. 1019 [102 L.Ed.2d 809, 109 S.Ct. 820].)

The judgment is affirmed.

Woods, (A. M.), P. J., and Goertzen, J., concurred.

Appellant's petitions for review by the Supreme Court were denied May 24, 1989.