[No. B039949. Second Dist., Div. Four. July 22, 1991.]

ADRIENNE DI DONATO, Plaintiff, Cross-defendant, and Appellant;
JOSHUA DI DONATO, Cross-defendant and Appellant, v.
STEVEN H. SANTINI, Defendant, Cross-complainant, and Respondent.

### COUNSEL

Edward J. Horowitz for Plaintiff, Cross-defendants and Appellants.

Robert P. Mandel, Grayson, Givner, Booke, Silver & Wolfe and Robert A. Levinson for Defendant, Cross-complainant and Respondent.

### OPINION

**GEORGE, Acting P. J.**—Appellant Adrienne Di Donato appeals from a judgment in favor of respondent Steven H. Santini, her former husband, in her action seeking damages for respondent's alleged refusal to share the profits of joint business ventures and to accord appellant full title to a single-family residence. Appellant also appeals, as does Joshua Di Donato (her son from a prior relationship), from a judgment entered in favor of respondent on his cross-complaint, which sought partition and sale of the residence and declaratory relief.

Appellants contend that the trial court erred in permitting respondent to exercise peremptory challenges to excuse women from the jury panel for a discriminatory purpose, resulting in a predominantly male jury. In light of the recent decision by the United States Supreme Court in *Edmonson v. Leesville Concrete Company, Inc.* (1991) 500 U.S. __ [114 L.Ed.2d 660, 111 S.Ct. 2077], and for the reasons that follow, we conclude that the trial court committed reversible error in (1) denying appellants' motion to dismiss the jury panel without first requiring respondent to demonstrate that his peremptory challenges were exercised on a neutral basis related to the particular case, and (2) refusing to hear the motion until after the jury had been sworn. Because the trial court, in deciding the issues raised in the cross-complaint, relied upon the verdict rendered by the jury on the causes of action alleged in the complaint, both the judgment entered on the complaint and the judgment entered on the cross-complaint must be reversed. Therefore we need not, and do not, address the other contentions raised by appellants.[1]

### FACTUAL AND PROCEDURAL HISTORY

Adrienne, a registered nurse, and Steven, a licensed psychologist, met in 1973, began living together in 1974, and were married in October 1975. They separated five months later, and the marriage was dissolved in 1976. The two never remarried, although in 1978 they resumed a personal relationship and lived together with Joshua during various periods between 1979 and 1986.

After dissolution of the marriage, Steven started a business which provided educational programs for nurses, psychologists, and others, enabling students to meet certain educational requirements in a given field. Adrienne worked to market the various programs. In late 1985, Steven purchased the residence in issue and, in November 1985, gave Adrienne a note promising to convey a one-half interest in the property to Adrienne and Joshua. In 1986, the parties separated permanently.

In March 1987, Adrienne filed the present action against Steven, seeking damages for breach of oral agreements, breach of the implied covenant of

---

[1]Appellants also contend the trial court erred in (1) denying a continuance of trial in order to enable them to obtain counsel, necessitating their proceeding in propria persona; (2) excluding, on the basis of privilege, evidence pertaining to their ownership of the residence; (3) refusing to instruct the jury, pursuant to a special instruction proposed by Adrienne, regarding the enforceability of agreements between unmarried partners; (4) failing to admonish the jury to disregard the argument of Steven's counsel comparing the agreement between Adrienne and Steven to one for prostitution; and (5) refusing to instruct the jury, pursuant to Adrienne's request, on the subjects of confidential relationships and fiduciary duty.

We refer to the parties by their first names only for convenience in differentiating among them.

good faith and fair dealing, and fraud. She further sought the reasonable value of services rendered, specific performance, an accounting, and injunctive relief. Adrienne alleged that in August 1979, when the two again had commenced living together and holding themselves out as husband and wife, Steven promised he would support Adrienne and Joshua, and that Adrienne would receive one-half of the earnings of various educational programs which they mutually had developed and one-half of the property they had accumulated. Adrienne further alleged that in June 1985, Steven orally agreed that Adrienne would have exclusive title to the residential property, and that he would execute an agreement giving Adrienne 25 percent of the profits of one of the educational training programs developed by Steven and Adrienne.

Steven filed a cross-complaint against Adrienne and Joshua, seeking partition and sale of the residence and asserting Adrienne had not complied with the terms of a marital property settlement agreement entered into at the time their marriage was dissolved.

Trial on the causes of action alleged in the complaint was before a jury, which, by a 10-to-2 vote, found that Steven had not breached any agreement to share his business property and proceeds with Adrienne. The jury, unanimously, also found that Steven had not breached any agreement to give Adrienne sole title to the residence.

The trial court dismissed the jury, severed the cross-complaint from the complaint, and entered judgment on the verdict. "After hearing and considering all the evidence, receiving the jury's special verdict, and considering argument," the court found in favor of Steven on the cross-complaint. The court ordered partition and sale of the residence, with the proceeds to be paid 50 percent to Steven, 25 percent to Adrienne, and 25 percent to Joshua, and determined that the second cause of action for declaratory relief was moot in light of the jury's verdict. After motions for new trial on the complaint and the cross-complaint were denied, the residence was sold and the proceeds distributed pursuant to the terms of the judgment on the cross-complaint.

## JURY SELECTION

We must describe in some detail the proceedings relating to selection of the jury. Jury selection commenced November 14, 1988. Immediately prior thereto, defense counsel sought to have the trial judge ask each juror whether or not he or she previously had been married and whether and how each marriage had terminated. The judge declined this request, advising defense counsel to make his own inquiry of the potential jurors.

During the course of the first afternoon of jury selection, defense counsel exercised six of the eight peremptory challenges accorded him by former Code of Civil Procedure section 601.[2] In each instance, he excused a female member of the jury panel. The first of these was Arnetta Robinson, an administrative clerk, who previously had been divorced and presently was separated from her second husband. She had indicated in response to questioning by defense counsel that her marital experience would not affect her ability to be impartial. Next, defense counsel excused Joan Smith, who was a registered nurse and divorced. Smith had indicated her marital status would not affect her ability to be impartial. At this point in the jury selection, Adrienne (who appeared in propria persona, as did Joshua) asked to approach the bench. The court refused permission.

Next, defense counsel excused Alida Mendez. Ms. Mendez, a postal clerk, had indicated that she presently was married but previously had been divorced. When queried both by the trial judge and defense counsel, she indicated her prior divorce would not affect her ability to be impartial. Next, defense counsel excused Juanita Gogerty. Gogerty, a retired bank teller, also had been divorced and, in response to defense counsel's query, stated her experience would not affect her ability to be impartial.

Next, defense counsel excused Patricia Phillips, a bookkeeper, who had indicated she was single. Defense counsel had not inquired whether she previously had been married, but only whether, in effect, she would be a fair juror, to which she had responded in the affirmative. Next, defense counsel excused Marion Marsh, a real estate broker, who had stated she was divorced but that her ability to be impartial would not be affected by that circumstance. Immediately after defense counsel exercised this peremptory challenge, Adrienne again asked the court whether "we" could approach the bench, but the trial judge denied the request.

At the end of the afternoon, after the prospective jurors had been excused, Adrienne, indicating she wished she had been permitted to raise the issue

---

[2]At the time of the proceedings below, former Code of Civil Procedure section 601 provided in relevant part: "If there are only two parties, each party shall be entitled to six peremptory challenges. If there are more than two parties, the court shall, for the purpose of allotting peremptory challenges, divide the parties into two or more sides according to their respective interests in the issues. Each side shall be entitled to eight peremptory challenges. . . . [¶] Peremptory challenges shall not be taken until the panel is full and then must be taken or passed by the sides alternately, commencing with the plaintiff. . . . The number of peremptory challenges remaining with a side shall not be diminished by any passing of a peremptory challenge." (This section was repealed in 1988 and replaced with Code of Civil Procedure, section 231, effective January 1, 1989 (Stats. 1988, ch. 1245, § 2, p. 4152).)

Former Code of Civil Procedure section 605 provided in relevant part: "[A]lternate jurors must . . . be subject to the same examination and challenges; provided, that each side, as provided in Section 601 in this code, shall be entitled to as many peremptory challenges to such alternate jurors as there are alternate jurors called." (This section was repealed in 1988 and replaced with Code of Civil Procedure section 234, effective January 1, 1989 (Stats. 1988, ch. 1245, § 2, p. 4154).)

earlier, orally objected to defense counsel's use of peremptory challenges to exclude women (also observing that two of these excluded jurors were Black and one was Hispanic). When Adrienne stated she would file a written motion on this issue in the morning, the court replied: "Well, I will overrule that objection. I mean, just for the record so that that's on the record, I haven't noticed anything like that thus far."

The following morning, appellants submitted a written motion to dismiss the jury panel on the ground that respondent had exercised his peremptory challenges in a systematic fashion to exclude women from the jury panel. Appellants' motion relied on the federal and state Constitutions, state statutes, and the decision in *Holley* v. *J & S Sweeping Co.* (1983) 143 Cal.App.3d 588 [192 Cal.Rptr. 74]. Prior to resumption of jury selection, Adrienne requested a conference outside the presence of the jury, which request the trial judge refused.

Voir dire of the jury resumed. Defense counsel exercised his seventh peremptory challenge to excuse a male potential juror, Miguel Lau, a maintenance supervisor, who never had been married. Defense counsel then used his eighth and final peremptory challenge to excuse a woman, Joan McCarty, a service representative, who never had been married. Defense counsel had asked this potential juror whether the circumstance that she never had been married would affect her ability to decide fairly a case involving persons who had been married, and had received a negative reply.

The jury, consisting of four females and eight males, was sworn. During the selection of alternate jurors, defense counsel used one peremptory challenge to excuse a female member of the panel, Jean Schwarz. Ms. Schwarz, a part-time apartment manager, was married. The alternate jurors, consisting of one male and one female, then were sworn.

Thereafter, outside the presence of the impanelled jury, the trial judge stated he had read appellants' motion to dismiss the panel and inquired of defense counsel, "Did you wish to respond to it?" Counsel responded that he did not agree with the motion, that the last person appellants had excused was female, and that he "had no intention of discriminating against women as opposed to men." The trial judge inquired of defense counsel whether he had "anything further," and received a negative response. The trial judge permitted further arguments from appellants, during which it was made apparent to the trial court that defense counsel had employed his peremptory challenges to excuse only one male member of the panel, and had done so after excusing six female members and only after receiving a copy of appellants' written motion to dismiss the jury panel. Thereafter, the trial judge denied the motion, describing it as "based upon discriminatory use of

peremptory challenges to female and minority jurors" and observing that four of the twelve persons ultimately selected as jurors were women, and two apparently were Black.

DISCUSSION

I

## THE PROHIBITION AGAINST THE EXERCISE OF PEREMPTORY CHALLENGES TO EXCLUDE PROSPECTIVE JURORS ON THE BASIS OF GROUP BIAS APPLIES TO THE TRIAL OF CIVIL CASES

Appellants assert they were denied their right to a jury drawn from a representative cross-section of the community pursuant to the requirements of the Seventh Amendment to the federal Constitution, as well as article I, section 16, of the California Constitution, and sections 197, subdivision (a), and 204 of the California Code of Civil Procedure because, without inquiry by the court, respondent was permitted to employ seven of his eight peremptory challenges to remove female prospective jurors from the panel.[3] We conclude, pursuant to the Fourteenth Amendment to the federal Constitution, and article I, sections 7 and 16, of the California Constitution, as implemented by statutory provisions, that a party to a civil lawsuit may not use peremptory challenges to exclude women from the jury panel on the basis of their gender.

---

[3]With reference to the matter of appellants' standing to raise this issue, we observe that under the federal standards most recently enunciated in *Powers* v. *Ohio* (1991) 499 U.S. ___ [113 L.Ed.2d 411, 111 S.Ct. 1364], a criminal case, "a defendant . . . can raise the third-party equal protection claims of jurors excluded by the prosecution because of their race," even though he or she is not a member of the race being excluded by means of peremptory challenge. 499 U.S. at pp. ___-___ [113 L.Ed.2d at pp. 428-429.] The recent decision in *Edmonson* v. *Leesville Concrete Company, Inc., supra*, 500 U.S. ___ [114 L.Ed.2d 660, 111 S.Ct. 2077], did not have occasion, in the context of a civil case, expressly to apply this rule of standing, because in *Edmonson* the party claiming there had been discriminatory use of peremptory challenges was Black, as were those excused by peremptory challenge. The California Supreme Court has declared that under the rules established in *People* v. *Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748], a criminal "defendant need not be a member of the group to challenge its exclusion." (*People* v. *Johnson* (1989) 47 Cal.3d 1194, 1217, fn. 3 [255 Cal.Rptr. 569, 767 P.2d 1047].) The decision in *Holley* v. *J & S Sweeping Co., supra*, 143 Cal.App.3d 588, did not have occasion to reach the issue of standing in a civil case, because the moving party and the excused prospective jurors were Black. Because it appears under federal and state law that both appellants would have standing to object to exclusion of "cognizable groups" (even those of which they were not members), for ease of reference we shall refer to both appellants in discussing the issue before us.

Although, arguably, the issue of the exclusion of racial minorities also was raised in the trial court, on appeal appellants have limited their claim of error to the exclusion of female potential jurors from the panel.

In criminal cases, the rule is well established that a party may not exclude potential jurors on the basis of "group bias." In *People* v. *Wheeler, supra,* 22 Cal.3d 258, the California Supreme Court held that a prosecutor's exercise of peremptory challenges to exclude prospective jurors solely on the basis of "group bias" violates a defendant's right "to trial by a jury drawn from a representative cross-section of the community under article I, section 16, of the California Constitution. This does not mean that the members of such a group are immune from peremptory challenges: individual members thereof may still be struck on grounds of specific bias, as defined herein." (*Id.,* at pp. 276-277.) The court observed that neither side in a criminal case is permitted to exercise peremptory challenges on the basis of group bias. (22 Cal.3d at p. 282, fn. 29.)

The California Supreme Court has since "made it clear that the courts of this state cannot tolerate [such] abuse of peremptory challenges to strip from a jury, solely because of a presumed 'group bias,' all or most members of an identifiable group of citizens distinguished on racial, religious, ethnic, or similar grounds." (*People* v. *Turner* (1986) 42 Cal.3d 711, 715-716 [230 Cal.Rptr. 656, 726 P.2d 102].) "Group bias" is defined as "a presumption that certain jurors are biased merely because they are members of an identifiable group distinguished on racial, religious, ethnic or similar grounds. [Citation.]" (*People* v. *Johnson, supra,* 47 Cal.3d 1194, 1215.)

The court in *Wheeler* described the following procedure for contesting a party's use of peremptory challenges against a cognizable group: "If a party believes his opponent is using his peremptory challenges to strike jurors on the ground of group bias alone, he must raise the point in timely fashion and make a prima facie case of such discrimination to the satisfaction of the court." (*People* v. *Wheeler, supra,* 22 Cal.3d 258, 280.) This is accomplished by: (1) making "as complete a record of the circumstances as is feasible"; (2) establishing "that the persons excluded are members of a cognizable group"; and (3) showing "a strong likelihood that such persons are being challenged because of their group association rather than because of any specific bias." (*Ibid.*) The court then must "determine whether a reasonable inference arises that peremptory challenges are being used on the ground of group bias alone." (22 Cal.3d at p. 281.)[4]

The procedures developed in *Wheeler* to ensure that the right to exercise peremptory challenges is not abused were applied in that case to the

---

[4]The procedure adopted by the United States Supreme Court to determine whether a prosecutor has employed peremptory challenges to exclude prospective jurors on the basis of group bias is "essentially the same procedure" as that adopted in *People* v. *Wheeler, supra,* 22 Cal.3d 258. (*People* v. *Turner, supra,* 42 Cal.3d 711, 717; see *Batson* v. *Kentucky* (1986) 476 U.S. 79, 96-98 [90 L.Ed.2d 69, 87-89, 106 S.Ct. 1712].)

prosecutor's exercise of peremptory challenges to exclude Blacks from the jury panel (*People* v. *Wheeler, supra,* 22 Cal.3d 258, 262-265), but the cases relied upon and the rationale enunciated therein indicate that all "cognizable groups" in society come within the rule prohibiting the discriminatory exclusion of prospective jurors from the jury panel. (*Id.,* at pp. 265-272; *People* v. *Trevino* (1985) 39 Cal.3d 667, 679 [217 Cal.Rptr. 652, 704 P.2d 719], disapproved on another ground in *People* v. *Johnson, supra,* 47 Cal.3d 1194, 1221.)

■ Decisions in both federal and state courts have established that prospective jurors may not be excluded on the basis that they are women. In *Taylor* v. *Louisiana* (1975) 419 U.S. 522 [42 L.Ed.2d 690, 95 S.Ct. 692], the United States Supreme Court held, in the context of a challenge to the composition of a jury venire: "We are . . . persuaded that the fair-cross-section requirement [of the federal Constitution] is violated by the systematic exclusion of women . . . . This conclusion necessarily entails the judgment that women are sufficiently numerous and distinct from men and that if they are systematically eliminated from jury panels, the Sixth Amendment's fair-cross-section requirement cannot be satisfied." (*Id.,* at p. 531 [42 L.Ed.2d at p. 698]; see *Holland* v. *Illinois* (1990) 493 U.S. 474 [107 L.Ed.2d 905, 919, 110 S.Ct. 803].) In the context of a challenge to the discriminatory use of peremptory challenges, women were recognized as a "cognizable group" in *People* v. *Macioce* (1987) 197 Cal.App.3d 262, 280 [242 Cal.Rptr. 771]. (See also, discussion in *People* v. *Wheeler, supra,* 22 Cal.3d 258, 268-269.)

In this state, the rule and procedures enunciated in *Wheeler* were applied in a civil case in which the defendant, a Caucasian, had attempted to remove Black prospective jurors from the jury panel by the use of peremptory challenges. (*Holley* v. *J & S Sweeping Co., supra,* 143 Cal.App.3d 588.) In that case, the court stated: "On appeal from a civil judgment we confront the apparently novel question whether the exercise of peremptory challenges in civil proceedings is subject to scrutiny under the constitutional standard announced in [*Wheeler*]. We will conclude for the reasons stated that substantially similar constitutional concerns warrant compliance with the *Wheeler* mandate. Since the record clearly demonstrates noncompliance, we reverse the judgment." (*Id.,* at p. 590.)[5]

---

[5]No published case in California has cited *Holley* as a basis for requiring that the protections established in *Wheeler* be applied in civil jury selection. Several criminal cases have cited *Holley* to illustrate the approximate number of persons in a "cognizable group" upon which the prima facie case finding may be premised. (See *People* v. *Motton* (1985) 39 Cal.3d 596, 607 [217 Cal.Rptr. 416, 704 P.2d 176]; *People* v. *Hall* (1989) 208 Cal.App.3d 34, 45 [256 Cal.Rptr. 149]; *People* v. *Harvey* (1984) 163 Cal.App.3d 90, 111 [208 Cal.Rptr. 910].)

The court in *Holley* v. *J & S Sweeping Co.*, *supra*, 143 Cal.App.3d 588, observed that, although the court in *People* v. *Wheeler*, *supra*, 22 Cal.3d 258, 282, footnote 29, expressly reserved for future determination the question whether the "procedural remedy" adopted in that case should be applied in civil proceedings, the *Wheeler* decision itself openly endorsed the views expressed in *Thiel* v. *Southern Pacific Co.* (1946) 328 U.S. 217, 220 [90 L.Ed. 1181, 66 S.Ct. 984, 166 A.L.R. 1412], a decision which "implicitly rejected any conceptual distinction [between criminal and civil proceedings] in the jury selection process" and "emphasiz[ed] the importance of the representative cross-sectional rule in order to protect the constitutional right to an impartial jury. [Citation.]" (*Holley* v. *J & S Sweeping Co.*, *supra*, 143 Cal.App.3d 588, 592-593.)

The Court of Appeal concluded in the *Holley* case: "In the light of the [*Wheeler*] court's penetrating analysis, we interpret that express endorsement to mean that the systematic exclusion of jurors at any stage of the selection process in either criminal or civil proceedings solely on the basis of group bias is constitutionally impermissible. That overriding consideration is now codified as a matter of statewide policy in order to promote random jury selection 'from a fair cross-section of the population of the area served by the court' (Code Civ. Proc., § 197) and to prevent an exclusion from jury service 'on account of race, color, religion, sex, national origin, or economic status.' (Code Civ. Proc., § 197.1.) Accordingly, we hold that the procedural safeguard created in *Wheeler* applies herein. [Citation.]" (143 Cal.App.3d at p. 593, fns. omitted.)[6]

 Quite apart from the analysis in *Holley* v. *J & S Sweeping Co.*, *supra*, 143 Cal.App.3d 588, recent authority from the United States Supreme Court unequivocally supports our adherence to *Holley*'s conclusion that the principles enunciated in *Wheeler* apply to the trial of civil cases. In *Edmonson* v. *Leesville Concrete Company, Inc.*, *supra*, 500 U.S. __ [114 L.Ed.2d 660, 111 S.Ct. 2077], the United States Supreme Court, applying "the equal protection component of the Fifth Amendment's Due Process Clause," held that race-based exclusion of jurors in a civil case by the device of the peremptory challenge "violates the equal protection rights of the challenged

One other criminal case cites *Holley* in support of the proposition that, for the purpose of making a prima facie showing, the moving party need not establish that group bias was the exclusive basis upon which the prospective jurors in question were excluded. (*People* v. *Moss* (1986) 188 Cal.App.3d 268, 275 [233 Cal.Rptr. 153].)

[6]In 1988, Code of Civil Procedure section 197 was repealed. Code of Civil Procedure section 191 and a new version of section 197 were added, essentially restating the existing policy and substituting "representative cross section" for "fair cross section." That same year, Code of Civil Procedure section 197.1 was repealed, and Code of Civil Procedure section 204 was enacted, providing in part: "(a) No eligible person shall be exempt from service as a trial juror by reason of occupation, race, color, religion, sex, national origin, or economic status, or for any other reason." (Stats. 1988, ch. 1245, § 2, pp. 4144-4145, eff. Jan. 1, 1989.)

jurors." (*Id.* at p. ___ [114 L.Ed.2d at p. 672, 111 S.Ct. at p. 2080].) That case originated in the United States District Court as a result of the circumstance that the personal injuries suffered by the plaintiff, a Black construction worker, were alleged to have been caused by the negligence of his employer occurring at Fort Polk, Louisiana, a federal enclave. (*Ibid.*)

In *Edmonson,* after the defendant construction company employed two of its three statutorily allotted peremptory challenges to remove Black persons from the jury panel, the plaintiff requested that the district court require that the defendant articulate a race-neutral explanation for excusing the two jurors. The district court denied the request on the ground that it was not required to scrutinize the use of peremptory challenges for evidence of bias (as explained in *Batson* v. *Kentucky, supra,* 476 U.S. 79), because *Batson* did not apply to civil proceedings. The Court of Appeals affirmed, concluding that the use of peremptory challenges by private litigants does not constitute state action and thus does not implicate constitutional guarantees. (500 U.S. at pp. ___ [114 L.Ed.2d at pp. 672-674, 111 S.Ct. 2080-2081].)

The court in *Edmonson* v. *Leesville Concrete Company, Inc., supra,* 500 U.S. ___ [114 L.Ed.2d 660, 111 S.Ct. 2077], after noting that more than a century of jurisprudence had been dedicated to the elimination of race prejudice within the jury selection process, stated: "[D]iscrimination on the basis of race in selecting a jury in a civil proceeding harms the excluded juror no less than discrimination in a criminal trial. [Citation.] . . . [¶][Nonetheless,] [t]he Constitution's protections of individual liberty and equal protection apply in general only to action by the government. [Citation.] Racial discrimination, though invidious in all contexts, violates the Constitution only when it may be attributed to state action. [Citation.]" (*Id.* at p. ___ [114 L.Ed.2d at p. 672, 111 S.Ct. at pp. 2081-2082].)

"With a few exceptions, . . . constitutional guarantees of individual liberty and equal protection do not apply to the actions of private entities. . . . [¶] [Nonetheless,] governmental authority may dominate an activity to such an extent that its participants must be deemed to act with the authority of the government and, as a result, be subject to constitutional constraints." (*Edmonson* v. *Leesville Concrete Company, Inc., supra,* 500 U.S. ___ [114 L.Ed.2d 660, 672-673, 111 S.Ct. 2077, 2082].) In deciding whether the described type of state action is present, a court first must inquire "whether the claimed constitutional deprivation resulted from the exercise of a right or privilege having its source in state authority [citation], and second, whether the private party charged with the deprivation could be described in all fairness as a state actor [citation]." (*Id.* at pp. ___ [114 L.Ed.2d at p. 673, 111 S.Ct. at pp. 2082-2083].)

In *Edmonson*, the court found that there was no doubt the first part of the test was satisfied, because, by their nature, peremptory challenges have no significance outside a court of law. Without the authorization arising in that case from a federal statute (28 U.S.C. § 1870), the defendant would not have been able to engage in the alleged discriminatory activity. (500 U.S. at p. __ [114 L.Ed.2d at pp. 673-674, 111 S.Ct. at p. 2083].) The court next considered "whether a private litigant in all fairness must be deemed a government actor in the use of peremptory challenges." (*Ibid.*) In making this determination, the court found it "relevant to examine the following: the extent to which the actor relies on governmental assistance and benefits [citations]; whether the actor is performing a traditional governmental function [citations]; and whether the injury caused is aggravated in a unique way by the incidents of governmental authority [citation]." (*Id.* at p. __ [114 L.Ed.2d at p. 674, 111 S.Ct. at p. 2083].)

The court proceeded to conclude the first factor was satisfied by the private parties' "extensive use of state procedures with 'the overt, significant assistance of state officials.' [Citations.]" (500 U.S. at p. __ [114 L.Ed.2d at p. 674, 111 S.Ct. at p. 2083].) The court observed that Congress has established the qualifications for jury service and outlined the procedures for the selection of jurors. To this end, each district court must adopt a plan implementing statutory policies of random juror selection from a fair cross-section of the community. The court noted the control exercised over the potential jurors at various stages of the selection process, including the ability of trial judges to impose penalties for a juror's failure to comply with various procedures, and the trial judge's substantial control over voir dire. (*Id.* at p. __ [114 L.Ed.2d at pp. 674-675, 111 S.Ct. at pp. 2084-2085].)

The court in *Edmonson v. Leesville Concrete Company, Inc., supra*, 500 U.S. __ [114 L.Ed.2d 660, 111 S.Ct. 2077], also concluded that use by a private litigant of peremptory challenges involved the performance of a traditional function of government, because the peremptory challenge "is used in selecting an entity that is a quintessential governmental body, having no attributes of a private actor." (*Id.* at p. __ [114 L.Ed.2d at p. 676, 111 S.Ct. at p. 2085].) Finally, the court noted that "the injury caused by the discrimination is made more severe because the government permits it to occur within the courthouse itself. . . . [¶] Race discrimination within the courtroom raises serious questions as to the fairness of the proceedings conducted there. Racial bias mars the integrity of the judicial system and prevents the idea of democratic government from becoming a reality. [Citations.]" (*Id.* at p. __ [114 L.Ed.2d at p. 678, 111 S.Ct. at p. 2087].) The court also affirmed that the opposing litigant had standing to raise the prospective juror's equal protection rights on behalf of the juror. (*Ibid.*)

We now determine whether the analysis of *Edmonson* applies in the context of a state court case in which the peremptory challenges in issue were exercised pursuant to state statutory authority. The claimed constitutional deprivation occurring in the present case, like that in *Edmonson*, resulted from the exercise of a right or privilege having its source in governmental authority, because the right to exercise peremptory challenges (former Code Civ. Proc., §§ 601, 605) is entirely a creation of state law. Furthermore, the private litigant fairly may be deemed to be a governmental actor, having made use of state procedures with the overt, significant assistance of the state and having received benefits therefrom. Although the trial court in this case exercised less control over voir dire than apparently would have occurred under the federal system, the other incidents of governmental control over the process of jury selection described in *Edmonson* were present. The peremptory challenges were employed to select a "quintessential governmental body," the jury. ██ ██ The injury incurred, in the form of discrimination based upon gender, was aggravated in a unique way because the government permitted it to occur within the courtroom.[7] Accordingly, the decision in *Edmonson* compels the conclusion that the

---

[7] The ruling in *Edmonson* is based upon the protections afforded by the "equal protection component of the Fifth Amendment's Due Process clause." (500 U.S. at p. __ [114 L.Ed.2d at p. 670, 111 S.Ct. at p. 2077].) Although the Fifth Amendment is not directly applicable to the states, the Fourteenth Amendment provides similar restraints on state action. (See *Bolling* v. *Sharpe* (1954) 347 U.S. 497, 498-500 [98 L.Ed. 884, 886-887, 74 S.Ct. 693]; *Brown* v. *Board of Education* (1954) 347 U.S. 483, 495 [98 L.Ed. 873, 881, 74 S.Ct. 686].) In addition, article I, section 7, of the California Constitution, in language virtually identical to those pertinent portions of the Fourteenth Amendment to the federal Constitution, provides similar guarantees that a person "may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws. . . ."

The federal and California constitutional bases for prohibiting the exercise of peremptory challenges in a discriminatory manner against a "cognizable group" have undergone separate evolution. In *People* v. *Wheeler, supra*, 22 Cal.3d 258, the California Supreme Court prohibited the exercise of peremptory challenges against "cognizable groups," stating that such use violated a criminal defendant's right to trial by a jury drawn from a representative cross-section of the community, guaranteed "equally and independently" by the Sixth Amendment to the federal Constitution and by article I, section 16, of the California Constitution. (22 Cal.3d at pp. 272, 276-277.)

In *Batson* v. *Kentucky, supra*, 476 U.S. 79, a criminal case involving a Black defendant, the United States Supreme Court held that the prosecutor's use of peremptory challenges to exclude Blacks from the jury violated the defendant's right to "equal protection of the laws" guaranteed by the Fourteenth Amendment to the federal Constitution. (*Id.*, at pp. 82-83 [90 L.Ed.2d at pp. 77-79].) In *People* v. *Turner, supra*, 42 Cal.3d 711, the California Supreme Court relied upon article I, section 16, of the California Constitution (guaranteeing a representative cross-section) and, citing *Batson*, the equal protection clause of the Fourteenth Amendment to the federal Constitution, in analyzing the defendant's claim that the prosecutor had used peremptory challenges in a racially discriminatory manner to exclude Blacks from the jury panel. (42 Cal.3d at pp. 715-717.)

prohibition against the use of peremptory challenges to exclude potential jurors on the basis of group bias extends to the trial of civil cases in California courts. Thus we conclude the procedure set forth in *Wheeler* applies in civil and criminal jury trials to prohibit the discriminatory use of peremptory challenges to exclude women and other "cognizable groups."

## II

IN LIGHT OF APPELLANTS' PRIMA FACIE SHOWING THAT RESPONDENT EMPLOYED HIS PEREMPTORY CHALLENGES TO EXCLUDE FEMALE JURORS ON THE BASIS OF THEIR GENDER, THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN NOT REQUIRING RESPONDENT TO DEMONSTRATE THAT THE PEREMPTORY CHALLENGES WERE EXERCISED ON A NEUTRAL BASIS RELATED TO THE PARTICULAR CASE

We proceed to apply the procedural rules set forth in *Wheeler* and *Holley* to the case before us. First, we must determine whether appellants established a prima facie case of group bias. (*People* v. *Wheeler, supra,* 22 Cal.3d 258, 280; *Holley* v. *J & S Sweeping Co., supra,* 143 Cal.App.3d 588, 591.) Under the foregoing decisions, appellants initially were required to

---

In *Holland* v. *Illinois, supra,* 493 U.S. 474 [107 L.Ed.2d 905, 110 S.Ct. 803], in which the Caucasian defendant challenged the exclusion of Blacks from the jury, the court declared that the Sixth Amendment to the federal Constitution (guaranteeing a representative cross-section) did *not* prohibit the prosecutor from using peremptory challenges to excuse prospective jurors based on race, but the court did not consider whether equal protection principles applied. (493 U.S. at p. 487 [107 L.Ed.2d at p. 921].) In *People* v. *Sanders* (1990) 51 Cal.3d 471 [273 Cal.Rptr. 537, 797 P.2d 561], decided after *Holland,* our Supreme Court continued to rely upon the representative-cross-section guarantee of article I, section 16, of the California Constitution, as well as the equal protection clause of the Fourteenth Amendment to the United States Constitution. (51 Cal.3d at pp. 497-498; see also, *People* v. *Hayes* (1990) 52 Cal.3d 577, 604 [276 Cal.Rptr. 874, 802 P.2d 376].)

In *Powers* v. *Ohio, supra,* 499 U.S. __ [113 L.Ed.2d 411, 424, 111 S.Ct. 1364], the United States Supreme Court held that the equal protection clause of the Fourteenth Amendment to the federal Constitution prohibits a prosecutor from using peremptory challenges to exclude prospective jurors solely on the basis of their race, even where the person objecting is not of the same race as the person or persons excluded. (499 U.S. at pp. __ [113 L.Ed.2d at pp. 424, 429].)

Therefore, it appears that under *federal* case law, the prohibition against improper use of peremptory challenges resides in the equal protection clause of the Fourteenth Amendment (and, in cases in which federal law applies exclusively, the "equal protection component of the Fifth Amendment"), whereas under *California* case law, this protection also continues to be afforded by the representative-cross-section guarantee of the California Constitution, contained in article I, section 16, as implemented by the provisions of Code of Civil Procedure sections 191, 197, and 204 (set forth, prior to 1989, in former §§ 197 and 197.1). As noted above, the equal protection clause in article I, section 7, of the California Constitution also apparently prohibits discriminatory use of peremptory challenges.

Despite the existence of these two separate sources of constitutional authority for the prohibition against the exercise of peremptory challenges based on group bias, it is clear that *Edmonson* and *Holley* require application of this prohibition in civil cases, enforced by the procedures mandated by *Wheeler.*

make as complete a record as possible of the circumstances affecting the fairness of the jury selection in progress. In light of the fact that a written record of the proceedings, such as we are able to scrutinize on this appeal, was not available to appellants at the time of their oral objection and written motion, they made as complete a record of the circumstances as then was feasible, by demonstrating the number and identities of women excluded.

Next, appellants were required to establish that peremptory challenges had been used against a "cognizable group." It is established that women constitute a "cognizable group." (*People* v. *Macioce, supra,* 197 Cal.App.3d 262, 280.)

Finally, appellants were required to demonstrate "a strong likelihood that such persons are being challenged because of their group association rather than because of any specific bias." (*People* v. *Wheeler, supra,* 22 Cal.3d 258, 280.) To provide illustrations of the manner in which this third requirement might be satisfied, the court in *Wheeler* set forth a number of alternatives, including a showing by counsel that the opposing attorney "has struck most or all of the members of the identified group from the venire, or has used a disproportionate number of . . . peremptories against the group." (*Ibid.*)

In view of the nature of the particular dispute underlying the present action, the information provided by the excluded female jurors, and the circumstance that defense counsel used all of his first six peremptory challenges to exclude females from the jury panel (prior to appellants' oral objection), and seven of his total of eight peremptory challenges to exclude females, we conclude that appellants met this third requirement and thus succeeded in establishing a prima facie case, under *Wheeler,* that respondent's use of peremptory challenges was motivated by group bias.

■ Respondent contends that the trial court found that no prima facie case had been established and that we must defer to this ruling of the trial court. We are mindful of recent California cases according deference to the trial court's finding that no prima facie case has been established. This rule has been applied, however, where it is clear the trial court was " 'aware of [its] duty under *Wheeler* to be sensitive to the manner in which peremptory challenges were used,' " and where the record demonstrates the trial court carefully scrutinized the voir dire proceedings and clearly was aware of the number of members of the "cognizable group" removed from the jury panel. (*People* v. *Sanders, supra,* 51 Cal.3d 471, 500-501; see *People* v. *Bittaker* (1989) 48 Cal.3d 1046, 1091-1092 [259 Cal.Rptr. 630, 774 P.2d 659];

*People* v. *Allen* (1989) 212 Cal.App.3d 306, 316-317 [260 Cal.Rptr. 463].)

In the present case, however, the record does not establish that the trial court was cognizant of its duty to be sensitive to the manner in which peremptory challenges were being used, nor that the court recognized that defense counsel had caused the removal of numerous female prospective jurors. When the trial court overruled appellants' oral objection, the court did not review the voir dire conducted to that point, nor did it make findings on the record. (Compare *People* v. *Sanders, supra,* 51 Cal.3d 471, 498-500.) Rather, the court merely commented that it had not noticed "anything like that thus far." Indeed, it is not apparent that the trial court was aware of its duty to apply in this civil case the procedure enunciated in *Wheeler.*

 Having concluded that the trial court failed to make an adequate finding as to whether appellants had made a prima facie case, and that appellants had, in fact, made such a prima facie case, we next consider the impact of the court's action in overruling appellants' objection without first seeking a response from defense counsel.

"Once a prima facie case has been shown, the burden shifts to the other party to demonstrate that the peremptory challenges were exercised on a neutral basis related to the particular case to be tried. [Citation.]" (*People* v. *Hayes, supra,* 52 Cal.3d 577, 605; *People* v. *Johnson, supra,* 47 Cal.3d 1194, 1216.) The court in *Holley* v. *J & S Sweeping Co., supra,* 143 Cal.App.3d 588, concluded, in accordance with *Wheeler* (22 Cal.3d at p. 283), that once a prima facie case has been shown, denial of a *Wheeler* motion "in the absence of a rebuttal showing that the peremptory challenges were based on grounds of specific bias constitutes prejudicial error per se. [Citation.]" (143 Cal.App.3d at p. 592.)

 In the present case, appellants twice sought to approach the bench for the purpose of making their objection, and the trial court should have permitted them to do so. When appellants thereafter, at the time they made their oral objection, established a prima facie case, the court overruled that objection without first requiring a rebuttal from defense counsel. This action in and of itself requires reversal.

The court also erred in refusing to entertain appellants' written motion until after the jury was sworn. It is established that a prima facie case, in order to be timely, must be made prior to the time the jury is sworn.

(*People* v. *Johnson, supra,* 47 Cal.3d 1194, 1216; *People* v. *Ortega* (1984) 156 Cal.App.3d 63, 67-68 [202 Cal.Rptr. 657].) The reason for this requirement is to enable the trial court to address the issues raised and thereby ensure that appropriate steps are taken to remedy the perceived discrimination during the selection process (rather than after the jury is sworn), presumably in order to avoid the necessity of repeating the entire jury-selection process. (156 Cal.App.3d at pp. 69-70.) Accordingly, the trial court may not delay its decision on a challenge to the selection process until after the panel has been sworn; it, too, must conform to the procedure contemplated in *Wheeler* by timely hearing the motion prior to the swearing of the jury.

　　　　When the trial court belatedly entertained appellants' written motion, the court compounded its earlier error by again failing to determine whether appellants had made a prima facie case.　　　　In criminal cases, it has been held that a trial court, by requesting that the prosecutor justify his or her exercise of peremptory challenges, impliedly has concluded that a defendant has established a prima facie case. (*People* v. *Hayes, supra,* 52 Cal.3d 577, 605; *People* v. *Johnson, supra,* 47 Cal.3d 1194, 1216.) "In determining whether to infer a trial court's finding of a prima facie case under *Wheeler,* we look to the whole record, examining the court's remarks in context." (*People* v. *Hayes, supra,* 52 Cal.3d 577, 605, fn. 2.) "[W]hen nothing in the record suggests the contrary, a trial court's statement requesting the prosecution to explain its challenges or to comment on the defendant's motion will be construed as a finding of a prima facie case." (*Ibid.*) In the present case, the trial court merely asked respondent's counsel whether he wished to respond to the motion.　　　　In light of the above-cited authorities, we cannot construe this inquiry as a request to explain or comment upon counsel's exercise of peremptory challenges. Thus, we cannot conclude the trial court impliedly found that appellants had established a prima facie case.

Finally, even if we were to construe the trial court's comments as an implied finding that appellants had established a prima facie case, the statement made by respondent's counsel at the time of the hearing, that he "had no intention of discriminating against women as opposed to men," is inadequate to sustain his burden of "demonstrat[ing] that the peremptory challenges were exercised on a neutral basis related to the particular case to be tried." (*People* v. *Hayes, supra,* 52 Cal.3d 577, 605.)　　 ██ █　　As observed by our Supreme Court with reference to the United States Supreme Court's opinion in *Batson* v. *Kentucky, supra,* 476 U.S. 79, 98 [90 L.Ed.2d 69, 88], "The court in *Batson* noted that the prosecutor may not rebut the defendant's prima facie case merely by denying that he had a

discriminatory motive . . . ." (*People* v. *Johnson, supra*, 47 Cal.3d 1194, 1216.)[8]

■ Although, on appeal, respondent has offered the rationale that he exercised his peremptory challenges against female potential jurors because they were divorced, rather than on the basis of their gender, this explanation was not tendered to the trial court, whose responsibility it is to determine whether a proffered explanation meets the "neutral basis" requirement. (See *People* v. *Hayes, supra*, 52 Cal.3d 577, 605.) We observe, moreover, that the explanation offered by respondent does not survive close scrutiny. One female who had been divorced was not excused by respondent, nor was a male prospective juror who had terminated a long-term relationship with a female with whom he had resided, and both of these members of the panel served on the jury. Additionally, respondent excused two female prospective jurors who never had been married, as well as a female prospective alternate juror who was married.

At oral argument, respondent asked us, in effect, to speculate (on the basis of the voir dire conducted) as to what rebuttal respondent would have tendered to the trial court had the court followed the legally mandated procedure of asking for such a response—and then to speculate additionally what findings the trial court would have made upon such a hypothetical rebuttal by respondent. This we decline to do. "Because [counsel for respondent] declined to give any such reason [at trial], we shall not speculate on whether he could have done so." (*People* v. *Wheeler, supra*, 22 Cal.3d 258, 283, fn. 30.)

For the foregoing reasons, we conclude that in light of the prima facie showing made by appellants, the trial court erred, both in denying appellants' motion to dismiss the jury panel without first requiring respondent to demonstrate that his peremptory challenges were exercised on a neutral basis related to the particular case, and in hearing the motion only after the jury had been selected and sworn. This error compels reversal of both judgments.

---

[8]Respondent again asks us to defer to the trial court, this time with regard to its conclusion as to whether the explanation tendered by the defense was adequate. Because a trial judge's findings related to the sufficiency of an attorney's showing " 'largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference' " and not "second-guess his factual determination." (*People* v. *Johnson, supra*, 47 Cal.3d 1194, 1221.) "The trial court, however, must make 'a sincere and reasoned attempt to evaluate the [attorney's] explanation in light of the circumstances of the case as then known, his knowledge of trial techniques, and his observations of the manner in which the [attorney] has examined members of the venire and has exercised challenges for cause or peremptorily.' " (*Id.*, at p. 1216.) In light of the perfunctory inquiry made by the trial judge in the present case and the absence of any subsequent meaningful finding on his part, we are unable to accord deference to the trial court's ruling denying appellants' challenge to the jury.

## DISPOSITION

The judgments are reversed. Appellants are to recover their costs on appeal.

Goertzen, J., and Epstein, J., concurred.

A petition for a rehearing was denied August 8, 1991, and respondent's petition for review by the Supreme Court was denied October 2, 1991. George J., did not participate therein.