STATE

v.

**Thomas OLIVIERA.**

No. 86–281–C.A.

Supreme Court of Rhode Island.

Dec. 16, 1987.

James E. O'Neil, Atty. Gen., Thomas Dickinson, Randall White, Asst. Attys. Gen., for plaintiff.

William Reilly, Public Defender, Barbara Hurst, Janice M. Weisfeld, Catherine Gibran, Asst. Public Defenders, for defendant.

## OPINION

SHEA, Justice.

On January 15, 1986, Thomas Oliviera was convicted on two counts of assault with intent to commit sexual assault and on one count of second-degree child molestation. On appeal, he contends that the trial judge erroneously refused to allow the jury to hear "pertinent" character evidence. He also contends that the prosecution discriminated against male members of the jury panel in exercising its peremptory challenges in violation of the equal-protection clause of the Fourteenth Amendment to the United States Constitution. We affirm the conviction.

### I

### THE DEFENDANT'S MILITARY RECORD WAS NOT "PERTINENT" CHARACTER EVIDENCE

At trial the two minor victims testified for the state. Each stated that during social visits with defendant's daughter, they encountered sexual advances by defendant.

The defendant denied all the state's allegations. To strengthen his defense, he introduced evidence of good character. For example, he testified about his employment with the town and his service as a member of the town's volunteer fire department. He testified that in his opinion, child molesters "should be punished severely." He also presented two witnesses who testified to his good reputation in the community.

Early in his direct testimony, defendant stated that upon leaving high school in 1969 he entered the military. He was then

asked three questions to which the prosecution's objections were sustained: (1) had he volunteered for the military or was he drafted, (2) where did he serve, and (3) what caused him to leave the military? The defendant's counsel asked for permission to make an offer of proof, which was not allowed. However, after the verdict, defendant was permitted by the court to supplement the record with an affidavit.[1] In this affidavit he stated that had he been permitted to testify fully, he would have told the jury that he had volunteered for Army service in Viet Nam, had been wounded in combat and undergone a year of hospitalization. Also, he stated that he had received an honorable medical discharge and had been awarded an Army commendation medal for heroism and the Purple Heart.

In this affidavit, defendant also offered additional character evidence concerning, among other things, other volunteer and charitable services to his community.[2] However, during trial his counsel never asked questions concerning these other activities. "It is a basic rule of appellate practice in this court that matters not brought to the attention of the trial justice may not be raised for the first time in this court on appeal." *Cok v. Cok*, 479 A.2d 1184, 1188 (R.I. 1984).

Courts following the common-law tradition have almost universally barred the state in a criminal trial from introducing evidence of bad character to establish a probability of guilt. *Michelson v. United States*, 335 U.S. 469, 475, 69 S. Ct. 213, 218, 93 L. Ed. 168, 173 (1948); *State v. Cardoza*, 465 A.2d 200, 204 (R.I. 1983); *McCormick on Evidence*, § 191 (3d Ed. Cleary 1984). "The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice." *Michelson*, 335 U.S. at 476, 69 S. Ct. at 218–19; 93 L. Ed. at 174; *see also State v. Colvin*, 425 A.2d 508, 511 (R.I. 1981).

Of course, the bar against introduction of character evidence placed upon the prosecution does not apply to the criminal defendant. 335 U.S. at 476, 69 S. Ct. at 219, 93 L. Ed. at 174. "[W]hen the table is turned and the defendant in a criminal case seeks to offer evidence of his good character to imply that he is unlikely to have committed a crime, the general rule against propensity evidence is not applied." *McCormick on Evidence*, § 191 at 566. Yet, a defendant's license to introduce evidence of his good character is not unlimited. Under the "prevailing view" only a "pertinent trait" may be offered by an accused.[3] *Id.* Thus the issue to be resolved in the case before us is whether

---

**1.** Although the better practice in this case would have been to allow the offer of proof for the record, defendant's affidavit shows that the evidence he would have offered concerning his military service was not pertinent to the crime charged.

**2.** The affidavit stated:

"If I had been permitted to fully testify, I would have told the jury that despite my combat service and continuing treatment for my injuries, I have devoted myself to being a productive citizen who gives to my community. I married and began a family in 1974, and that year began taking courses toward an eventual degree in architectural drafting. I have sought and secured gainful employment. When I lived in the Town of Foster, I joined the volunteer ambulance corps in that town. When I moved to Scituate, I joined the volunteer fire department there, and devoted many, many hours of my time to that organization. I became a certified search and recovery SCUBA diver, in connection with the fire department's rescue services. In addition, I took a lengthy course at Rhode Island Hospital to become a certified emergency medical technician. For a long time before my trial, I was a member of the Knights of Columbus and I acted as a youth advisor for the Catholic Youth Organization."

**3.** Although not applicable to the instant case, the recently adopted Rhode Island Rules of Evidence adhere to the "prevailing view." Rhode Island Rules of Evidence 404(a)(1) reads:

"(a) Character evidence generally.—Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
(1) Character of accused.—Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same."

evidence of a person's military service is a "pertinent trait."

■ We recognize that several other courts and authorities have defined "pertinent" as synonymous with "relevant." *See, e.g.,* 22 C. Wright and K. Graham, *Federal Practice and Procedure:* Evidence § 5236 at 384 (1978); *see also United States v. Angelini,* 678 F.2d 380, 381 (1st Cir. 1982); *United States v. Hewitt,* 634 F.2d 277 (5th Cir. 1981). However, we believe a better, more narrow definition is provided by Black's Law Dictionary, 1030 (5th Ed. 1979), which states that evidence is "pertinent" if it would "logically influence the issue." Relevant evidence may have multiple purposes, some of which may have no bearing upon the resolution of a given case. In particular, evidence of a defendant's general good character usually is relevant but is often offset by the danger that the jury will be improperly persuaded by feelings of sympathy. In our opinion, in order for character evidence to be "pertinent," some nexus should exist between the particular evidence offered and the crime charged.

Other courts have consistently ruled that a defendant's military record is not pertinent to the crime charged. As far back as *The Trial of Captain William Kidd, at the Old Bailey, for Murder and Piracy upon the High Seas,* 14 How. St. Tr. 123, 146 (Old Bailey 1701), Captain Kidd's offer to "prove what services I have done for the king" was met with the response "[w]hat would that help in this case of murder?" *See also United States v. Solomon,* 686 F.2d 863 (11th Cir. 1982)(military service of defendant found not relevant in prosecution for criminal conspiracy); *United States v. Goldfarb,* 643 F.2d 422 (6th Cir. 1981) (military service of defendant found not relevant in prosecution for violations of the Travel Act); *State v. Sbrilli,* 136 N.J.L. 66, 54 A.2d 221 (1947)(military service of defendant found not relevant in prosecution for rape).

■ "[R]arely and only upon a clear showing of prejudicial abuse of discretion will appellate courts disturb the ruling of trial courts in the matter of character evidence testimony." *United States v. Trollinger,* 415 F.2d 527, 529 (5th Cir. 1969); *see generally Flanzbaum v. Senco Products, Inc.,* 460 A.2d 15, 16–17 (R.I. 1983). In the case at hand, it was certainly within the discretion of the trial judge to rule that the character evidence offered was not pertinent to the crime charged.

II

USE OF GENDER AS A CRITERION FOR EXERCISING PEREMPTORY CHALLENGES DOES NOT VIOLATE THE EQUAL–PROTECTION CLAUSE

During jury selection, the state, over defense counsel's objection, exercised six of its seven peremptory challenges to remove male members of the jury panel. The defendant contends that this constituted gender-based discrimination in violation of the equal-protection clause of the Fourteenth Amendment of the United States Constitution as recently interpreted by the United States Supreme Court in *Batson v. Kentucky,* 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

This court has twice rejected Sixth Amendment claims of gender-based discrimination during jury selection. *See State v. Ucero,* 450 A.2d 809 (R.I. 1982); *State v. Raymond,* 446 A.2d 743 (R.I. 1982). However, in light of the new standard for challenging discriminatory use of peremptory challenges announced in *Batson,* we feel it is appropriate to consider the issue again.

*Batson* overturned the landmark decision *Swain v. Alabama,* 380 U.S. 202, 85 S. Ct. 824, 13 L. Ed. 2d 759 (1965), in which the United States Supreme Court ruled that the equal-protection clause of the Fourteenth Amendment does not prohibit the use of race as a criterion for exercising a peremptory challenge in any "particular" case, as long as no systematic removal of *all* Blacks from *all* jury panels exists.

All Federal Courts adhered to the *Swain* evidentiary standard until Judge Eugene H. Nickerson of the Eastern District of New York granted a writ of habeas corpus

on grounds of discrimination on the basis of race in the jury selection in *McCray v. Abrams*, 576 F. Supp. 1244 (E.D.N.Y. 1983).[4] The Second Circuit affirmed *McCray* on Sixth Amendment grounds.[5] *McCray v. Abrams*, 750 F.2d 1113 (2d Cir. 1984). However, it did not limit its holding to cases involving racial discrimination. Rather, it ruled that discrimination against any "cognizable group in the community" in jury selection constitutes a violation of a defendant's Sixth Amendment right to a jury representing a cross section of the community. *Id.* at 1131–32.

The United States Supreme Court reconsidered *Swain* in *Batson v. Kentucky, supra.* In *Batson,* the defendant was tried in front of an all-white jury in a state court in Kentucky, and convicted on charges of second degree burglary and receipt of stolen goods. The prosecutor exercised his peremptory challenges to strike all four Blacks on the panel. Defense counsel moved to discharge the jury on grounds of discrimination in the jury selection. The trial judge responded that the parties are entitled to use their peremptory challenges "to strike anyone they want to." 476 U.S. at ——, 106 S. Ct. at 1715, 90 L. Ed. 2d at 78.

Expressly overruling *Swain,* the United States Supreme Court found that discrimination against "a member of a cognizable racial group," *id.* at ——, 106 S. Ct. at 1723, 90 L. Ed. 2d at 87, in jury selection constitutes a violation of the equal-protection clause of the Fourteenth Amendment, even in situations in which no systematic pattern of discrimination can be found.

■■■ It is our opinion that *Batson* does not extend to gender-based discrimination. Throughout the *Batson* decision, the Court

refers solely to discrimination based upon *race.* For example, to establish a prima facie case of discriminatory use of peremptory challenges, "the defendant first must show that he is a member of a *cognizable racial group* * * * and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's *race.*" (Emphasis added.) *Id.* at ——, 106 S. Ct. at 1723, 90 L. Ed. 2d at 87. Certainly, the Court was aware of the broader standard (e.g., "cognizable group in the community") announced in *McCray.* It clearly preferred to limit the new standard to racially-based discrimination.

One of the purposes of the *Batson* decision was to cure the long history of discrimination faced by Blacks during jury selection. Unlike Blacks as a group, males as a group have not been historically discriminated against during jury selection.

Finally, if the use of gender as a criterion for exercising peremptory challenges is prohibited, *all* such challenges will become inherently suspect. Opposing counsel could demand an alternative explanation for every challenge exercised. The damage to the peremptory challenge, a vital component of trial by jury, would be enormous, if not fatal.

For the reasons stated, the defendant's appeal is denied and dismissed, the judgment of conviction is affirmed, and the papers of the case are remanded to the Superior Court.

KELLEHER, J., did not participate.

---

4. The groundwork for *McCray* was laid in two state court decisions: *People v. Wheeler,* 22 Cal. 3d 258, 583 P.2d 748, 148 Cal. Rptr. 890 (1978), and *Commonwealth v. Soares,* 377 Mass. 461, 387 N.E. 2d 499, *cert. denied,* 444 U.S. 881, 100 S. Ct. 170, 62 L. Ed. 2d 110 (1979). In these cases the Supreme Court of California and the Supreme Judicial Court of Massachusetts ruled that use of peremptory challenges by prosecutors to eliminate jurors on the basis of bias against a particular group violates clauses of their respective state constitutions that guaran-

tee a defendant the right to a trial by a jury drawn from a representative cross section of the community.

5. The Sixth Amendment was not made applicable to the states until *Duncan v. Louisiana,* 391 U.S. 145, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968), approximately three years after *Swain v. Alabama,* 380 U.S. 202, 85 S. Ct. 824, 13 L. Ed. 2d 759 (1965).