■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID IRIZARRY, Appellant.—Judgment, Supreme Court, Bronx County (Phylis Skloot Bamberger, J.), rendered July 15, 1989, which convicted defendant of burglary in the second degree and sentenced him to a prison term of eight years to life, unanimously reversed, on the law, and the case remanded for a new trial.

Defendant's conviction arises from the burglary of his aunt's apartment, and his guilt was established by overwhelming evidence at trial. The sole claim on appeal concerns a violation of defendant's equal protection rights by the prosecutor's use of peremptory challenges to exclude women from the jury.

During the first round of jury selection, the prosecutor exercised peremptory challenges against all five women jurors who were not otherwise excused from this group. As soon as the prosecutor exercised challenges against these women, defense counsel noted "I would like the record to reflect the assistant has excused all the remaining females on the panel, just in case there is a pattern that is developing, all females would be excused by the prosecution." In response, the prosecutor disclaimed any intentional pattern, and asserted that he would have accepted the one woman that defense counsel had successfully challenged for cause. Of the second round of 16 prospective jurors, five were women. Of these five, three were peremptorily challenged by the prosecutor and one by the defense, while one was selected for the jury. Defense counsel noted the prosecutor's peremptory challenges to women for the record. At the conclusion of these two rounds, the 12 regular jurors and the first alternate had been selected. The first prospective juror called during the third round, a woman,

was selected as the second alternate. In sum, the jury consisted of 11 men and one woman, and one of two alternates was a woman.

Defense counsel moved for a mistrial based on the prosecutor's exclusion of women from the jury, relying on *Batson v Kentucky* (476 US 79). The trial court held a hearing on the motion prior to the commencement of the trial. The court ruled that women were a "cognizable group" for *Batson* purposes and that defendant, a man, had standing to raise the claim. The court then found that defendant had made out a prima facie case of improper discriminatory use of peremptory challenges, and required the prosecutor to give his reasons for exercising his peremptory challenges in this manner. The prosecutor offered specified reasons for his challenges to each of the nine women jurors he had challenged. The trial court made no findings of fact from the Bench regarding the prosecutor's use of his peremptory challenges, and without elaboration or further comment denied the defendant's motion for a mistrial.

Five months later, and after conclusion of the trial, the court issued a lengthy written decision on the mistrial motion (142 Misc 2d 793). In that opinion, the court found that only two of the nine peremptory challenges of women jurors appeared pretextual, and upon holding that "the failure to justify on grounds independent of gender 2 of 9 challenges does not warrant a finding of improper use of peremptories", formally denied the motion for a mistrial. *(Supra,* at 818-819.)

In *Batson v Kentucky* (476 US 79, *supra),* the Supreme Court held that a defendant has a right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria, on the basis of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Although the issue of whether *Batson* applies to gender-based discrimination has not yet been squarely addressed by the Supreme Court, the People concede that the trial court correctly held that these principles apply to the improper use of peremptory challenges to exclude women from a petit jury. The Equal Protection Clause restricts government action based on gender and to withstand constitutional challenge, gender-based distinctions are subject to a "strict scrutiny" analysis *(see, e.g., Craig v Boren,* 429 US 190, 197). We agree that under such scrutiny, the *Batson* principles prohibiting discrimination in jury selection should be applied to gender-based peremptory challenges to jurors.

We find that the trial court also correctly held that defen-

dant, a man, has standing to challenge gender discrimination against female jurors. As the Supreme Court stated in *Batson (supra,* at 87):

"Racial discrimination in selection of jurors harms not only the accused whose life or liberty they are summoned to try. * * * [B]y denying a person participation in jury service on account of his race, the State unconstitutionally discriminated against the excluded juror. * * *

"The harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice."

Accordingly, the rules prohibiting discrimination in jury selection exist to protect not only the defendant but the harm to the excluded juror and society as a whole. In this context, the fact that the defendant is not a member of the group excluded from the jury does not preclude the defendant from standing to challenge the constitutional error, since the impact of the injury extends to the excluded jurors *(see, People v Kern,* 75 NY2d 638, 654, n 3, where the Court of Appeals recognized that the "criminal defendant's race is 'irrelevant to the Fourteenth Amendment standing inquiry' " in this regard, quoting *Holland v Illinois,* 493 US 474, —, 110 S Ct 803, 814 [Marshall, J., dissenting], where the Supreme Court declined to pass on the issue but five Justices agreed with the concept that a white defendant would have standing to challenge the exclusion of blacks from a jury).

Once a prima facie showing of a discriminatory use of peremptory challenges has been made, the burden shifts to the prosecution to explain adequately the racial exclusion by a showing of neutral selection criteria. *(Batson v Kentucky,* 476 US, *supra,* at 93-94.) Here, after a hearing, the trial court found that the prosecutor satisfactorily explained the challenges to seven out of nine prospective women jurors but that the reasons given by the prosecutor as a basis for excluding two women were not gender neutral and were thus unacceptable. In other words, the trial court concluded that two women had been excluded from the jury because they were women. Once it made that finding, the court could not conclude as it did, "[t]he motion for a mistrial is denied because the failure to justify on grounds independent of gender 2 of 9 challenges does not warrant a finding of improper use of peremptories." *(Supra,* at 818-819.)

Both *Batson v Kentucky (supra,* at 87-88) and *People v Kern* (75 NY2d 638, 654, *supra)* hold that there is a denial of equal protection both to the defendant and the excluded juror when the juror is peremptorily challenged on the basis of race. Once a court concludes, as the trial court did here, that two jurors have been excluded because they are women, the defendant and the juror have been denied the equal protection of the law.

Recently, in *People v Jenkins* (75 NY2d 550, 558-559 [1990]), the Court of Appeals concluded that

"the fact that *all* black jurors were not removed by the prosecution's discriminatory use of peremptory challenges does not render the use against some any less a violation of *Batson.* * * *

"For the purposes of equal protection, the constitutional violation is the exclusion of *any* blacks solely because of their race. If any blacks are so excluded, it is of no moment that the jury nevertheless contains a token number of blacks."
This holding applies equally in the case of the improper exclusion of *any* women.

Accordingly, since the trial court found that in two instances the prosecutor used peremptory challenges to exclude women from the jury, and since these two women can no longer be seated, reversal and a new trial are required.

We also note our disapproval of the procedure utilized by the trial court once the issue was raised. Where jury discrimination is asserted, various remedies are available including the recalling of the excused jurors, a mistrial, or reversal of the conviction, depending upon the point in the proceedings when the issue is raised and the action taken in response thereto. Where a finding of jury discrimination is not made until after the conclusion of the trial, reversal of the conviction is the only remedy, and the one to be avoided if at all possible. Here, defense counsel commendably articulated the concerns about the use of peremptory challenges promptly, at an early stage of jury selection. The appropriate response by the court at that juncture would have been the recalling and reseating of the challenged juror for further inquiry. Instead the court waited until after the jury was impaneled before addressing the issue and denied the mistrial motion without making a specific finding on the critical issue of whether there was a pattern of purposeful discrimination. The subsequent issuance of findings in a written opinion was not a procedure designed to promptly confront and, where demonstrated, cor-