# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2023 ND 62

State of North Dakota,                                    Plaintiff and Appellee

    v.

Brandon Roosevelt Grant,                          Defendant and Appellant

## No. 20220279

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Tristan J. Van de Streek, Judge.

AFFIRMED.

Opinion of the Court by Bahr, Justice.

Nicholas S. Samuelson (argued), Paul R. Emerson (on brief), and SheraLynn Ternes (on brief), Assistant State's Attorneys, Fargo, ND, for plaintiff and appellee.

Richard E. Edinger, Fargo, ND, for defendant and appellant.

**Bahr, Justice.**

[¶1]   Brandon Grant appeals from a third amended judgment after a jury found him guilty of three counts of attempted murder and three counts of aggravated assault.  Grant argues the State's peremptory strike of a potential juror was improper and the district court erred by denying the *Batson* challenge. He further argues insufficient evidence supports the conviction on counts one, two, four, and five. We affirm.

I

[¶2]   On February 20, 2021, a fight broke out in a bar involving Grant and three other individuals. Bouncers broke up the fight. Grant fired gunshots outside the bar, resulting in injury to three victims. Grant was charged with three counts of attempted murder and three counts of aggravated assault. A jury trial was held in May 2022.

[¶3]   During voir dire, Grant challenged the State's use of a peremptory challenge on the only Black juror on the panel under *Batson v. Kentucky*, 476 U.S. 79 (1986). The district court acknowledged both Grant and the prospective juror were Black men and required the State to provide its rationale for striking the juror. The State listed the juror's "activism-type" shirt, eye rolls, and general body language as reasons for its peremptory strike. The district court found the State's explanations race-neutral and denied the *Batson* challenge.

[¶4]   The State presented 17 witnesses. Only one of the three victims testified at trial. The jury was shown videos of the fight inside the bar and the subsequent shooting. Grant asserted self-defense and testified on his own behalf. At the close of the State's case, Grant moved for a judgment of acquittal under N.D.R.Crim.P. 29. The district court denied his motion. The jury found Grant guilty on all counts.

[¶5]  Grant argues the district court erred in denying his *Batson* challenge. In *Batson*, the United States Supreme Court ruled the Equal Protection Clause of the Fourteenth Amendment prohibits a prosecutor from peremptorily striking a juror solely on the basis of race. 476 U.S. at 89. *Batson* provides a three-step process:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Snyder v. Louisiana*, 552 U.S. 472, 476-77 (2008) (cleaned up); *see also City of Mandan v. Fern*, 501 N.W.2d 739, 743 (N.D. 1993).

[¶6]  A district court's findings in resolving a *Batson* challenge during jury selection will not be overturned on appeal unless they are clearly erroneous. *Fern*, 501 N.W.2d at 749. "A finding of fact is clearly erroneous when it is induced by an erroneous view of the law, when there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence, we are left with a definite and firm conviction that a mistake has been made." *State v. Stridiron*, 2010 ND 19, ¶ 16, 777 N.W.2d 892.

[¶7]  "The trial court has a pivotal role in evaluating *Batson* claims. Step three of the *Batson* inquiry involves an evaluation of the prosecutor's credibility[.]" *Snyder*, 552 U.S. at 477. "[T]he best evidence [of discriminatory intent] often will be the demeanor of the attorney who exercises the challenge." *Hernandez v. New York*, 500 U.S. 352, 365 (1991). "In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed." *Id*. "As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.'" *Id*. (quoting *Wainwright v. Witt,* 469 U.S. 412, 428 (1985)); *see also Batson*, 476 U.S. at 98 n. 21 ("Since the trial judge's findings in the context under

consideration here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference.").

[¶8] Outside the presence of the jury, defense counsel raised the *Batson* challenge:

> Your Honor, Mr. Grant is certainly entitled to a trial by a jury of his peers. [The juror] may have had some strong feelings in regard to some of the questions asked, but he is a person of color, a person of the appropriate age in regard to the witnesses we're going to see and we're going to hear.
>
> It's peremptory. The State does get a lot of leeway, but I think, at the very least, they need to state the rationale for striking of [the juror].

The State explained its rationale:

> Yes, Your Honor. When making these decisions, we based them off of a lot of things, and sometimes it is just feel. I will note that almost immediately when we seated the jury, we noticed a shirt that is an activism-type shirt. That's a consideration that we took into account.
>
> Right before our break, Mr. Mottinger had asked [the juror] the question about whether or not he would feel okay or be okay with returning a not guilty verdict if the State didn't prove all the essential elements. While we understand the answer to that is a [sic] affirmative, he looked directly in our direction, stared Detective Loos and myself down and said, "Absolutely."
>
> There were times during both questionings, mostly Mr. Emerson, where we are reading body language. And there was eye rolling and different body language.
>
> So those are the reasons that we chose to use a strike.

The district court asked defense counsel, "[D]o you want to make any more of a record at this point?" Defense counsel responded, "No, Your Honor. I believe his answer to the questions were appropriate. I think he'd be a good juror." The court denied the *Batson* challenge, finding "the reasons offered by the prosecutor, in addition to those things that I didn't see, constitute race-neutral reasons for striking [the juror]." The court noted it had not observed the described behavior of the prospective juror.

3

[¶9] Following the challenge by defense counsel, the State initially explained its reasoning for striking the juror as "it is just feel." "[P]eremptories are often the subjects of instinct, and it can sometimes be hard to say what the reason is." *Miller-El v. Dretke*, 545 U.S. 231, 252 (2005) (internally citing *Batson*, 476 U.S. at 106 (Marshall, J., concurring)). However, "the prosecutor's [ ] explanation must be clear and specific." *State v. Galvez*, 2015 ND 14, ¶ 10, 858 N.W.2d 619 (citation omitted). The State further named the juror's "activism-type" shirt, eye rolls, and general body language as reasons for its peremptory strike—describing the juror's behavior and response to the question whether or not he would feel comfortable returning a not guilty verdict if the State did not prove all the essential elements.

[¶10] "A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror." *Hernandez*, 500 U.S. at 360. "The second step of this process does not demand an explanation that is persuasive, or even plausible." *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995). "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez*, at 360.

[¶11] "Prospective jurors' specific responses and demeanor during voir dire may constitute neutral explanations for exercising the peremptory challenges." *Fern*, 501 N.W.2d at 749. The Eighth Circuit Court of Appeals consistently holds "demeanor and body language may serve as legitimate, race-neutral reasons to strike a potential juror." *United States v. Hampton*, 887 F.3d 339, 342 (8th Cir. 2018) (cleaned up); *see also United States v. Ellison*, 616 F.3d 829, 832 (8th Cir. 2010) (holding it was not clearly erroneous to overrule a *Batson* challenge where the government claimed a juror had been inattentive, rolled her eyes, and sighed during voir dire); *United States v. Davidson*, 449 F.3d 849, 852-53 (8th Cir. 2006) ("Body language and demeanor can be appropriate reasons to strike jurors[.]").

[¶12] Although the district court did not personally observe the juror's behavior, it found the State's reasons to be race-neutral. *Batson* plainly did not "hold that a demeanor-based explanation must be rejected if the judge did not

4

observe or cannot recall the juror's demeanor." *Thaler v. Haynes*, 559 U.S. 43, 48 (2010).

[¶13] Grant cites the "activism-type" shirt as pretextual or purposeful discrimination. "If a prosecutor articulates a basis for a peremptory challenge that results in the disproportionate exclusion of members of a certain race, the trial judge may consider that fact as evidence that the prosecutor's stated reason constitutes a pretext for racial discrimination." *Hernandez*, 500 U.S. at 363. After the State provided its reasoning, the district court asked defense counsel for further argument. He provided none.

[¶14] The burden for showing purposeful discrimination rests upon the opponent of the peremptory strike, here, Grant. *Hernandez*, at 359. Grant did not mention the "activism-type" shirt or provide clarity regarding the shirt. The record does not describe the "activism-type" shirt. Nothing in the record demonstrates the content on the juror's shirt implicated racial subject matter. Grant offered no showing of purposeful discrimination based on the State's reason of the "activism-type" shirt. Nor did he argue to the district court the State's reference to an "activism-type" shirt was not a race-neutral basis for striking the juror.

[¶15] An "activism-type" shirt can relate to racial or non-racial matters. Moreover, a citizen of any race or gender can wear an "activism-type" shirt, and the fact a citizen of any race or gender is wearing an "activism-type" shirt could cause a prosecutor or defense counsel to question whether the prospective juror has an agenda that could impact the prospective juror's ability to be fair and impartial. The district court's conclusion the prosecutor's reference to an "activism-type" shirt was race-neutral is not clearly erroneous.

[¶16] The district court, weighing all the circumstances, found the State's reasons for the peremptory strike race-neutral. Grant offered no showing of purposeful discrimination. We conclude the court's findings are not clearly erroneous, and the court did not err in denying Grant's *Batson* challenge.

5

[¶17] Grant challenges the sufficiency of the evidence in support of counts one, two, four, and five. He argues because the alleged victims underlying these counts did not testify, no evidence refutes Grant acted in self-defense. At the close of the State's case, Grant moved for a judgment of acquittal under N.D.R.Crim.P. 29. The district court denied his motion.

[¶18] A district court's decision on a Rule 29 motion for a judgment of acquittal is reviewed for an abuse of discretion. *State v. Eggleston*, 2020 ND 68, ¶ 7, 940 N.W.2d 645. "A district court abuses its discretion in denying a motion under Rule 29 if the evidence is insufficient to sustain a conviction." *Id.* "In reviewing challenges to the sufficiency of the evidence on appeal, the defendant 'bears the burden of showing the evidence reveals no reasonable inference of guilt when viewed in the light most favorable to the verdict.'" *Id.* (quoting *State v. Rai*, 2019 ND 71, ¶ 13, 924 N.W.2d 410).

[¶19] The two alleged victims in counts one, two, four, and five did not testify, which Grant argues "creates the inference Defendant had meritorious self-defense claims." He argues absent testimony from the alleged victims, the State failed to negate self-defense beyond a reasonable doubt. "We interpret this argument as a concession sufficient evidence supporting the elements of the underlying charge was provided to the jury and his argument is limited to his claim of self-defense." *State v. Foster*, 2020 ND 85, ¶ 27, 942 N.W.2d 829.

[¶20] Grant does not contest the sufficiency of the evidence underlying counts three and six wherein the victim underlying those counts testified. The same circumstances surrounding counts three and six surround counts one, two, four, and five. The jury was shown a video of the bar fight preceding the shooting and surveillance footage of the shooting. The videos show the three victims were ushered out the backdoor and Grant independently walked out the same door immediately behind them. Grant fired just outside the door. He continued out the door and fired again. None of the victims possessed a weapon. None of the victims advanced toward Grant outside the bar. The State presented other evidence, including forensic evidence showing a bullet entered a victim's shoe from the exterior of the sole, indicating he was most likely lying

down or retreating. *See Eggleston*, 2020 ND 68, ¶ 11 (sufficient evidence sustained the conviction after self-defense assertion because "trial included evidence the victim's death was the result of [Defendant] shooting the victim in the back while the victim was walking away").

[¶21] Reviewing the evidence in the light most favorable to the verdict, the evidence was sufficient for a reasonable fact finder to determine Grant was not acting in self-defense. The district court did not err in dismissing Grant's motion for an acquittal because sufficient evidence was presented for the jury to convict him of attempted murder and aggravated assault, and for the jury to conclude he was not acting in self-defense. Sufficient evidence was presented to sustain the conviction.

IV

[¶22] Because the district court did not clearly err in finding the State's use of its peremptory challenge was race-neutral and denying the *Batson* challenge, and because sufficient evidence sustains the conviction, we affirm the district court judgment.

[¶23] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr

7